UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| KENNETH ANDREW COLBAUGH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 1:24-CV-00151-DCLC-CHS |
| | ) | |
| v. | ) | |
| | ) | |
| MEIGS COUNTY SHERIFF'S DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Following the death of Tabatha Marie Colbaugh ("decedent") while she was in the custody of Meigs County Sheriff Deputy Robert J. Leonard ("Deputy Leonard"), Nathan Alexander Smith ("Smith"), decedent's adult son, initiated a wrongful death action. Thereafter, Kenneth Andrew Colbaugh ("Colbaugh"), decedent's husband, filed a separate wrongful death action. Both cases are currently before the Court to determine who possesses the statutory right to litigate decedent's wrongful death claim.

I.  **BACKGROUND**

On February 14, 2024, Deputy Leonard arrested decedent after responding to a disturbance call in Birchwood, Tennessee. While transporting decedent to Meigs County jail, Deputy Leonard drove into the Tennessee River, and the accident was fatal to both Deputy Leonard and decedent. The patrol car was found at the bottom of the river with decedent in the back seat with her hands still cuffed behind her. At the time of her death, decedent was married to Colbaugh and had four children: Smith and three minor children, N.R., J.E., and L.C.

On March 4, 2024, Smith initiated a wrongful death action against Meigs County and Neal Pinkston, the administrator for the estate of Deputy Leonard. *See* Case No. 1:24-CV-104 ("the Smith case"). Thereafter, Colbaugh moved to intervene and to dismiss Smith's claims, arguing that Smith filed prematurely and without standing because the right of action under Tennessee's wrongful death statute passed to him as decedent's surviving spouse. Colbaugh simultaneously filed a separate wrongful death action against Meigs County Sheriff's Department, the Estate of Robert Leonard, various John Does, and Meigs County. *See* Case No. 1:24-CV-151 ("the Colbaugh case"). Colbaugh later amended his Complaint to add decedent's minor children, through their respective guardians, as plaintiffs to the Colbaugh case and withdrew his Motion to Intervene and Motion to Dismiss in the Smith case.

Given that both the Smith case and the Colbaugh case present common questions of law and fact, the Court consolidated them and designated the above-captioned action the lead case [Doc. 21]. Prior to consolidation, Smith moved to intervene in the Colbaugh case to assert his position that Colbaugh does not have standing to assert the wrongful death claim at issue [Doc. 17]. The Court granted Smith's motion [Doc. 40], allowed the parties to engage in limited discovery [Doc. 43], and held an evidentiary hearing on November 18, 2024 to address the conflicting claims of the statutory right to prosecute the wrongful death action.

The evidence presented at the hearing shows that Colbaugh and decedent were married on July 22, 2015. A year later, Colbaugh announced on social media that he and decedent were expecting a child, L.C. In July 2017, Colbaugh was awarded custody of L.C., and in late 2017 and early 2018, Colbaugh and decedent experienced issues with their relationship, in part, due to decedent's drug use and erratic behavior. By April 2018, Colbaugh publicly announced on social media that he was in a relationship with another woman. That relationship lasted at least one year

2

and, by June 2020, Colbaugh, again, publicly announced that he was in relationship with a different woman. During the time that he was seeing other women, Colbaugh also communicated with decedent's sister, Amber McKinney, about decedent. On one occasion, he informed Mrs. McKinney that he called the police on decedent for being at his house at 5:30 a.m. and stated that she needs to stay away from him and L.C. Mrs. McKinney also invited Colbaugh to bring L.C. to her siblings' birthday party, but Colbaugh declined because he did not want to be around decedent. On October 19, 2020, Colbaugh petitioned for an Order of Protection against decedent, in which he stated that she was stalking him and that they had been separated for almost four years.

Based on the foregoing, Smith asserts that Colbaugh waived the right to institute and the right to collect any proceeds from decedent's wrongful death action under Tennessee's wrongful death statute.

## II. ANALYSIS

The parties concede that, under Tennessee law, the right of action for a wrongful death claim passes first to the surviving spouse and, if there is no surviving spouse, to the children of the deceased. *See* Tenn. Code Ann. §§ 20-5-106(a), 20-5-107(a). It is also well-established that "multiple actions may not be brought to resolve a single wrongful death claim[.]" *Kline v. Eyrich*, 69 S.W.3d 197, 207 (Tenn. 2002); *see Matthews v. Mitchell*, 705 S.W.2d 657, 660 (Tenn. Ct. App. 1985) ("There can be but one cause of action for the wrongful death of another."). Thus, "the children of the deceased may maintain an action only if the decedent is not survived by a spouse or if the surviving spouse has waived his or her right of priority." *Id*.

In 2011, the Tennessee General Assembly amended the wrongful death statutes to include provisions governing rights of action in situations where a spouse has abandoned the deceased spouse. *See* Tenn. Code Ann. §§ 20-5-106(c); 20-5-107(e); 20-5-110(c). Specifically, the

surviving spouse's "right to institute and the right to collect any proceeds from a wrongful death action . . . shall be waived, if the children or next of kin establish the surviving spouse has abandoned the deceased spouse as described in § 36-4-101(a)(13)[1] or otherwise willfully withdrawn for a period of two (2) years." Tenn. Code. Ann. §§ 20-5-106(c)(1), 20-5-107(e)(1). Moreover, although the party claiming waiver generally "has the burden of proving it by a preponderance of the evidence," *Kentucky Nat. Ins., Co. v. Garner*, 6 S.W.3d 493, 499 (Tenn. App. 1999), there is a rebuttable presumption of abandonment if two years have passed since the alleged abandonment or willful withdrawal. *See* Tenn. Code Ann. §§ 20-5-106(c)(2), 20-5-107(e)(2).

Here, Smith has presented sufficient evidence that Colbaugh willfully withdrew from the marriage for two years. From April 2018 to October 2020, Colbaugh publicly entered into relationships with two different women, expressed no desire to continue a relationship with decedent, and petitioned for an Order of Protection to prohibit decedent from contacting him or L.C. Although Colbaugh may have had just cause to withdraw, such that he did not abandon decedent as that term is defined by Tenn. Code Ann. § 36-4-101(a)(13), he undoubtedly withdrew from the marriage for a period of two years and did so willfully, *i.e.*, with full awareness of what he was doing. Considering two years passed between Colbaugh's willful withdrawal and decedent's death, there is a rebuttable presumption of abandonment. *See* Tenn. Code Ann. §§ 20-5-106(c)(2), 20-5-107(e)(2). And Colbaugh has failed to present any evidence that he attempted to return to the marriage or otherwise support decedent during the two years preceding her death. Accordingly, Colbaugh waived his right to institute and right to collect any proceeds from

---

[1] Abandonment is established if the children can show that the surviving spouse "abandoned the [decedent] or turned the [decedent] out of doors for no just cause, and has refused or neglected to provide for the [decedent] while having the ability to so provide." Tenn. Code Ann. § 36-4-101(a)(13).

4

decedent's wrongful death action, *See* Tenn. Code Ann. §§ 20-5-106(c)(1), 20-5-107(e)(1), and the right of action passes to decedent's children. Tenn. Code Ann. §§ 20-5-106(a), 20-5-107(a).

This creates separate procedural issues, however, because even with the dismissal of Colbaugh, two wrongful death actions remain—the Smith case initiated by decedent's adult child and the Colbaugh case in which decedent's minor children, through their respective representatives, are named as plaintiffs. As an initial matter, it is well-established that the right of action that passes to the children is "one that is 'single, entire [,] and indivisible.'" *Kline*, 69 S.W.3d at 207 (citation omitted). Thus, decedent's four children jointly possess the right of action for the wrongful death claim and are indispensable parties. *Williams v. Baxter*, 536 F. Supp. 13, 17 (E.D. Tenn. 1981). As stated previously, it is also well-established that "multiple actions may not be brought to resolve a single wrongful death claim[.]" *Kline*, 69 S.W.3d at 207. Based on the foregoing, only one case can proceed and all children jointly possessing the right of action must be properly joined as party plaintiffs. Thus, the ultimate issue is whether to proceed in the Smith case or the Colbaugh case. Due to the procedural posture of these consolidated cases, the Court finds it appropriate to first provide the parties a chance to confer and attempt to reach a resolution regarding how to proceed consistent with the instant opinion.

### III. CONCLUSION

For the reasons provided herein, Colbaugh's claims in the above-captioned action are **DISMISSED**. The remaining parties shall confer and file a status report within **thirty (30) days** of this Order informing whether they were able to reach a resolution and, if so, how they wish to proceed with the children's joint right of action in one case.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge